IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

LAWRENCE BREEDLOVE,                    )
                                       )
                Plaintiff,             )
                                       )
v.                                     )          Case No. CIV-08-1065-D
                                       )
DENNIS COSTNER, *et al.*,              )
                                       )
                Defendants.            )

## REPORT AND RECOMMENDATION ON THE
## DEFENDANTS' DISPOSITIVE MOTION
## WITH RESPECT TO THE SECTION 1983 CLAIMS[1]

Mr. Lawrence Breedlove is a state inmate alleging:

- retaliation;

- deprivation of due process through transfers to segregation, conviction on misconduct charges, and confiscation and destruction of property;[2]

- cruel and unusual punishment through forced double-celling and incitement of harm from other prisoners;

- deliberate indifference to serious medical needs; and

- deprivation of due process and violation of the Ex Post Facto Clause through manipulation of prison sentences.

---

[1]      The present report does not address Mr. Breedlove's claims under the Americans with Disabilities Act. *See infra* p. 43.

[2]      The Defendants apparently believe that the Plaintiff had asserted a "vague" state tort claim for the loss or destruction of personal property. Motion to Dismiss/Motion for Summary Judgment and Brief in Support at p. 16 (Jan. 21, 2009) ("Defendants' Dispositive Motion"). No such claim was asserted in the complaint.

Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 at pp. 2-5 (Oct. 6, 2008) ("Complaint").

Invoking statutes that include 42 U.S.C. § 1983,[3] Mr. Breedlove seeks declaratory, injunctive, and monetary relief.[4]

Defendants Jim Rabon, Debbie Morton, Justin Jones, J. Marlar, Chester Mason, Marty Sirmons, and Karmeon Harvoneck have moved for dismissal or summary judgment.[5]

Based on the Eleventh Amendment, the Court should grant the Defendants' motion to dismiss the official capacity claims for damages under Section 1983. The dismissal should be without prejudice.

The Court should dismiss with prejudice the remaining claims under Section 1983 for manipulation of the sentence in light of the unavailability of relief under the statute.

On the claims involving destruction of property in July 2007 and imposition of a disciplinary conviction in January 2007, the Court should grant the motion to dismiss on the part of Defendants K. Harvoneck, M. Sirmons, D. Morton, and Justin Jones. For these defendants, the Plaintiff has not pled a cause of action on which relief can be granted. However, the dismissal should be without prejudice to the Plaintiff's right to file a motion for leave to amend if he believes that the pleading defect can be cured.

---

[3]    Complaint at p. 2.

[4]    Complaint at p. 5.

[5]    The dispositive motion was filed by Debbie Morton, Justin Jones, J. Marlar, Chester Mason, and Marty Sirmons. Defendants' Dispositive Motion at p. 1. Mr. Karmeon Harvoneck subsequently joined in the motion. *See* Order (Mar. 6, 2009).

Based on expiration of the statute of limitations, the Court should grant the motion for summary judgment on the Section 1983 claims for injunctive and declaratory relief and for damages in the Defendants' personal capacities concerning:

- deprivation of due process through transfers to segregation and a disciplinary conviction in 2004 and

- cruel and unusual punishment through forced double-celling and incitement of harm from other prisoners in 2005.

In light of Mr. Breedlove's failure to properly exhaust administrative remedies, the Court should grant summary judgment to the Defendants on the Section 1983 claims for injunctive and declaratory relief and for damages in the Defendants' personal capacities concerning:

- retaliation;

- deprivation of due process through confiscation and destruction of property in February 2007 and April 2008; and

- deliberate indifference to the Plaintiff's Hepatitis C, hypertension, and need for "healthy foods" to control his diabetic condition.

In light of the absence of evidence involving deliberate indifference, the moving defendants are entitled to summary judgment on Mr. Breedlove's remaining Section 1983 claims with respect to the need for diabetic monitoring tools.

## ISSUES ON THE MOTION TO DISMISS

Mr. Breedlove has sued the Defendants in their official and individual capacities, seeking monetary damages for property loss, a declaratory judgment, and injunction. *See*

Complaint at pp. 1, 2½, 5. The Defendants seek dismissal on some of the causes of action, arguing that: (1) the Eleventh Amendment prevents recovery of damages on the official capacity claims,[6] (2) the claims involving administration of the sentence are not cognizable under Section 1983, and (3) Mr. Breedlove has failed to allege an affirmative link between Count I and any of the named defendants. The Defendants are correct on the three arguments.[7]

I.    Standard for the Motion to Dismiss

In part, the Defendants seek dismissal for failure to state a valid claim. *See* Fed. R. Civ. P. 12(b)(6). In determining whether dismissal is appropriate, the Court considers whether the Plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

---

[6]    In seeking dismissal based on the Eleventh Amendment, the Defendants cite Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants' Dispositive Motion at p. 15. In other jurisdictions, courts have disagreed about whether they should consider Eleventh Amendment immunity under Rule 12(b)(1) or 12(b)(6). *See Clark v. Bartling*, 2009 WL 814457, Westlaw op. at 2 (W.D. Okla. Mar. 26, 2009) (unpublished op.) (discussing cases). However, the potential difference in standards would not affect the outcome on the Defendants' Eleventh Amendment challenge. *See id.*, 2009 WL 814457, Westlaw op. at 1-2.

[7]    The Defendants have also argued that the Plaintiff has not complied with Fed. R. Civ. P. 8(a). Defendants' Dispositive Motion at pp. 19-21. However, the Court need not address this argument because of the availability of dismissal or summary judgment on other grounds.

In applying this standard, the Court must assume the truth of all well-pleaded factual allegations in the complaint and construe them in the light most favorable to the Plaintiff. *See Bryson v. Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990). But [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

II.    Eleventh Amendment

In part, Mr. Breedlove seeks damages for the confiscation and destruction of property. *See supra* pp. 3-4. In their official capacities, the Defendants enjoy Eleventh Amendment immunity for these claims.

The Eleventh Amendment precludes suit in federal court against a State by citizens of another state or by the State's own citizens. *See Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). When a state official is named as a defendant, the Eleventh Amendment continues to bar the action "if the state is the real, substantial party in interest." *Frazier v. Simmons*, 254 F.3d 1247, 1253 (10th Cir. 2001).

An exception exists when Eleventh Amendment immunity has been waived by the state or abrogated by Congress. *See Chaffin v. Kansas State Fair Board*, 348 F.3d 850, 866 (10th Cir. 2003). But the State of Oklahoma has not waived its Eleventh Amendment immunity. *See* Okla. Stat. tit. 51 § 152.1(B) ("it is not the intent of the state to waive any rights under the Eleventh Amendment to the United States Constitution"). And Congress did

not abrogate Oklahoma's Eleventh Amendment immunity through the enactment of Section 1983. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979).

The Eleventh Amendment covers Mr. Breedlove's official capacity claims for damages under Section 1983. *See Tarrant Regional Water District v. Sevenoaks*, 545 F.3d 906, 911 (10th Cir. 2008). As a result, these claims should be dismissed without prejudice.[8]

III.     Administration of the Sentence

In Count III, Mr. Breedlove claims manipulation of the case management system, violating the constitutional right to due process and the prohibition against *ex post facto* laws. Complaint at p. 4.[9] For this claim, the Plaintiff seeks "declaratory and injunctive relief from all of the unlawful applications of prison policies, rules and regulations that have and continue to be used to hold the plaintiff in custody against the laws and constitution of the United States." *Id.* at p. 5. These forms of relief are unavailable in an action based on 42 U.S.C. § 1983.

---

[8]     *See Polaski v. Colorado Department of Transportation*, 198 Fed. Appx. 684, 687-86 (10th Cir. Aug. 2, 2006) (unpublished op.) (stating that a dismissal under the Eleventh Amendment should be without prejudice); *Divine Church of God and Christ v. Taxation & Revenue Department*, 116 F.3d 1489, 1997 WL 355326, Westlaw op. at 2 (10th Cir. June 27, 1997) (unpublished op.) (remanding with instructions to dismiss claims, without prejudice, based on the Eleventh Amendment).

[9]     In the complaint, Mr. Breedlove attributes the manipulative practices to Betsy Greenway, Mike McFarland, and Jim Rabon. Complaint at p. 4. Ms. Greenway and Mr. McFarland are not parties. *See id.* at pp. 1, 2½.

When a state prisoner seeks earlier release, his sole federal remedy is a writ of habeas corpus.[10]  Mr. Breedlove's request for declaratory and injunctive relief would shorten his confinement.  As a result, these requests must be brought in an action for habeas relief rather than a Section 1983 suit.[11]  In these circumstances, the Court should dismiss Count III for failure to state a claim on which relief can be granted.  Because the defect cannot be cured in a Section 1983 proceeding, the dismissal should be with prejudice.  *See Curley v. Perry*, 246 F.3d 1278, 1282 (10th Cir. 2001) (stating that because no amendment could cure the defect, the district court's dismissal with prejudice was proper).

## IV.    Affirmative Link to the Allegations Underlying Count I

In Count I, Mr. Breedlove has alleged that four of the defendants - K. Harvoneck, M. Sirmons, D. Morton, and Justin Jones - had continuously allowed subordinates to take and destroy property and issue rule violations without due process.  Complaint at p. 3.  The Defendants correctly argue that Mr. Breedlove has not alleged a link between themselves and the harm alleged in Count I.

---

[10]    *See Preiser v. Rodriguez*, 411 U.S. 475, 487-90 (1973); *see also* Plaintiff['s] Response to "Order" of Response, to Defense "Motion to Dismiss or Alternative Summary Judgment," and Plaintiff['s] Brief at p. 11 (Mar. 25, 2009) ("Plaintiff's Response") ("a habeas is for the duration of time of prison sentence").

[11]    *See Hudson v. Kansas*, 2009 WL 3182987, Westlaw op. at 1-2 (10th Cir. Oct. 6, 2009) (unpublished op.) (holding that a prisoner's Section 1983 suit for miscalculation of her sentence "plainly is contrary to the Court's holdings in *Preiser* and subsequent case law" in light of "her proposed re-calculation of time served"); *Frey v. Adams County Court Services*, 267 Fed. Appx. 811, 813 (10th Cir. Mar. 4, 2008) (unpublished op.) (holding that a prisoner's injunction claim, seeking speedier release, "cannot be pursued under § 1983 but must be pursued as a habeas claim under § 2241" (citations omitted)).

The Court's initial task is to determine whether the Defendants are seeking dismissal or summary judgment for this contention. They assert that the Plaintiff has failed to link any of the parties to the allegations in Count I, "[a]side from . . . speculative and groundless allegations of supervisory liability." Defendants' Dispositive Motion at p. 13. The Defendants do not specify whether this argument is being used to support dismissal or summary judgment. *See id.* at pp. 12-13. But at the end of the request, the Defendants state that "Count I must be dismissed" and they do not refer to any evidence for the argument. *Id.* at p. 13. Accordingly, the Defendants appear to be seeking dismissal of Count I based on a failure to link the parties to the alleged harm.

As discussed below, the Defendants are entitled to summary judgment on every aspect of Count I except the claims involving destruction of property in July 2007 and imposition of a disciplinary conviction in January 2007. *See infra* pp. 11-36, 39-42. For the claims subject to summary judgment on other grounds, the Court need not address the argument for dismissal based on the absence of an "affirmative link." Thus, the Court need only consider the argument for dismissal with respect to the Plaintiff's claims against K. Harvoneck, M. Sirmons, D. Morton, and Justin Jones in connection with the destruction of property in July 2007 and the imposition of a disciplinary conviction in January 2007.[12]

---

[12] In the complaint, Mr. Breedlove did not mention Jim Rabon, J. Marlar, or Chester Mason in connection with Count I. *See* Complaint at p. 3. Thus, the Plaintiff apparently did not intend to include these individuals as parties on Count I.

In the complaint, Mr. Breedlove alleged that the four individuals had "continuously allowed subordinates to take and destroy property and issue rule violations against plaintiff without due process." Complaint at p. 3; *see supra* p. 7. This allegation is consistent with the governing standard for supervisory liability at the time that Mr. Breedlove filed the complaint. For example, the Tenth Circuit Court of Appeals stated over 30 years ago:

> The "affirmative link" requirement of [*Rizzo v. Goode*, 423 U.S. 362 (1976)] means to us that before a superior may be held for acts of an inferior, the superior, expressly or otherwise, must have participated or acquiesced in the constitutional deprivations of which complaint is made.

*Kite v. Kelley*, 546 F.2d 334, 337 (10th Cir. 1976) (citation omitted). Thus, when the action began, the Plaintiff's allegation in Count I might arguably have sufficed as an invocation of supervisory liability.[13]

During the pendency of the suit, the Supreme Court eliminated this possibility in *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937 (2009). There a Pakistani citizen sued the Attorney General of the United States and the F.B.I. Director, claiming that they had knowingly condoned the imposition of harsh conditions of confinement because of his religion, race, and national origin. *See Ashcroft v. Iqbal*, 129 S. Ct. at 1951. The Supreme Court held that this allegation should not have prevented dismissal for failure to state a valid claim under Fed. R. Civ. P. 12(b)(6). *Id*. at 1951-52.

---

[13]     As noted above, the Plaintiff alleged in Count I that four defendants had "allowed subordinates" to commit constitutional violations. Complaint at p. 3; *see supra* pp. 7, 9. One federal appeals court stated in similar circumstances that "if [the defendant had] knowingly allowed a subordinate to transgress constitutional limits, then [the defendant] courted liability." *Barham v. Ramsey*, 434 F.3d 565, 578 (D.C. Cir. 2006).

In reaching this conclusion, the Supreme Court explained that "the term 'supervisory liability' is a misnomer" because every government official "is only liable for his or her own misconduct." *Id*. at 1949.  Thus, the Court focused on the sufficiency of the allegations to determine whether they had adequately alleged a plausible basis to infer misconduct on the part of the two "supervisor[s]," who were the Attorney General and F.B.I. Director.  *Id*. at 1949-50.

As noted above, the *Iqbal* plaintiff alleged that the supervisors had knowingly condoned the constitutional transgressions.  *See supra* p. 9.  But the Court regarded this allegation as simply a "formulaic" and "conclusory" recitation of the elements of a constitutional violation and unworthy of "the presumption of truth" ordinarily available to factual allegations in a complaint.  *Ashcroft v. Iqbal*, 129 S. Ct. at 1951; *see supra* p. 5.

*Ashcroft v. Iqbal* compels the same result here.  Mr. Breedlove alleged in the complaint that the Defendants had "allowed subordinates" to commit constitutional violations.  *See supra* pp. 7, 9 & note 13.[14]  Similarly, the *Iqbal* plaintiff had alleged in the

---

[14]     In the complaint, Mr. Breedlove also incorporated the exhibits to a contemporaneous brief. Complaint at p. 3 ("See: Exhibits to Injunction/TRO - Attached").  In these exhibits, Mr. Breedlove included a grievance and administrative appeal related to the destruction of his property on July 6, 2007.  Declaration and Memo of Law in Support of Order to Show Cause and Temporary Restraining Order, Pursuant to Rule 65, F.R.Civ.P., Exh. 11-C at pp. 3-4 (Oct. 6, 2008) ("Plaintiff's TRO Brief"); *see infra* note 38.  The grievance and administrative appeal were apparently handled by two of the defendants (Marty Sirmons and Debbie Morton).  Plaintiff's TRO Brief, Exh. 11-C at pp. 3, 5.  But the required link between the Defendants and the harm cannot be based on their handling of the grievance or administrative appeal.  *See Gallagher v. Shelton*, __ F.3d __, 2009 WL 4047952, Westlaw op. at 4 (10th Cir. Nov. 24, 2009) (unpublished op.) ("We agree with the reasoning in our previous unpublished decisions that a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." (citations omitted)); *accord Buckley v. Barlow*, 997 F.2d 494, 495 (8th

complaint that the supervisory defendants had "condoned" the misdeeds by subordinates. *See supra* p. 9. The words "allowed" and "condoned" bear similar definitions, and one would be hard-pressed to imagine a reason to regard Mr. Breedlove's allegation as sufficient when the Supreme Court deemed a virtually identical allegation as insufficient.

Under *Ashcroft v. Iqbal*, the federal district court should grant the motion to dismiss on the Section 1983 claims against K. Harvoneck, M. Sirmons, D. Morton, and Justin Jones for destruction of property in July 2007 and imposition of a misconduct conviction in January 2007. However, the dismissal should be without prejudice to Mr. Breedlove's right to seek leave to amend if he believes the pleading defect is curable.

## ISSUES ON THE MOTION FOR SUMMARY JUDGMENT

In part, the Defendants seek summary judgment based on the statute of limitations and failure to exhaust administrative remedies. Defendants' Dispositive Motion at pp. 7-9, 18-19. The Defendants are entitled to summary judgment on these issues with respect to the alleged transfers to segregation in 2004; issuance of a misconduct charge on July 12, 2004; double-celling and incitement of violence on May 23, 2005; retaliation; deprivation of due process for destruction of property in February 2007 and April 2008; inadequacy of the treatment of hypertension and Hepatitis C; and failure to provide healthy foods. The Court should reject the Defendants' summary judgment arguments for failure to exhaust the claims involving property losses in July 2007 and a disciplinary conviction in January 2007.

---

Cir. 1993) (*per curiam*) (denial of a grievance does not state a substantive constitutional claim).

The Court should also grant summary judgment to the Defendants on the remaining claim involving deliberate indifference to a medical need for monitoring of a diabetic condition. On this claim, Mr. Breedlove has failed to provide evidence that would suggest deliberate indifference on the part of the moving defendants.

On the personal capacity claims involving reimbursement for the property destroyed in July 2007, the Court should reject the Defendants' argument for summary judgment based on qualified immunity.

I.    The Summary Judgment Standard

On their motion for summary judgment, the Defendants bear the burden to justify the entry of judgment as a matter of law. *See Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 982 (10th Cir. 2002). Summary judgment is necessary when "the pleadings, the discovery and disclosure materials on file, and any affidavits[15] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this determination, "[t]he court views the record and draws all favorable inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005) (citation omitted).

---

[15]    Because the complaint was verified, the document should be treated as an affidavit. Complaint at p. 6; *see Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988) (*per curiam*).

Application of the summary judgment standard depends on whether the issue involves an element of the Plaintiff's *prima facie* case or an affirmative defense.[16]

On the claim involving diabetic monitoring, the Defendants seek summary judgment based on the absence of deliberate indifference to a medical need. This issue involves an element of the Plaintiff's *prima facie* case. *See Doe v. Bagan*, 41 F.3d 571, 573 (10th Cir. 1994) (stating that the plaintiffs bear the burden of proof on the essential elements of a claim under Section 1983). Thus, the Defendants need only produce evidence negating an essential element of the claim or show that the Plaintiff lacks evidence to carry his burden. *See Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). Once the Defendants satisfy their burden of production, the Plaintiff incurs a duty to present evidence creating "an inference of the existence of each element essential to the case with respect to which [he] has the burden of proof." *Terra Venture, Inc. v. JDN Real Estate-Overland Park, L.P.*, 443 F.3d 1240, 1243 (10th Cir. 2006) (citations omitted). In the absence of such evidence, the Defendants would be entitled to summary judgment. *See id.*

---

[16]     *See Johnson v. Riddle,* 443 F.3d 723, 725 n.1 (10th Cir. 2006) (discussing the difference when the summary judgment addresses elements of the plaintiff's case and an affirmative defense).

The Defendants seek summary judgment on many of the claims based on timeliness and exhaustion.[17] Because these issues involve affirmative defenses,[18] the Defendants bear the burden of proof.[19] As a result, the Defendants must demonstrate the absence of a disputed material fact on the issues of timeliness and exhaustion. *See Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). If the Defendants satisfy this burden, the Plaintiff would incur a duty to "demonstrate with specificity the existence of a disputed material fact." *Id*. In the absence of such a showing by the Plaintiff, the Defendants would be entitled to summary judgment on their affirmative defense. *See id*.

II.     Summary Judgment on the Defense of Timeliness

Mr. Breedlove alleges that prison officials began their retaliatory acts in June 2004, after he had complained about the harassment of his daughter. Complaint at pp. 2-3. According to the Plaintiff, prison officials improperly:

- transferred him to segregation in June and July 2004;

---

[17]     The Defendants have also asserted qualified immunity, which is an affirmative defense. *See Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995) ("qualified immunity is an affirmative defense to a section 1983 action" (citation omitted)). But the Defendants have not adequately presented this defense. *See infra* pp. 38-39.

[18]     *See Youren v. Tintic School District*, 343 F.3d 1296, 1303 (10th Cir. 2003) (holding that the statute of limitations is an affirmative defense); *Jones v. Bock*, 549 U.S. 199, 216 (2007) (concluding "that failure to exhaust is an affirmative defense under the [Prison Litigation Reform Act]").

[19]     *See Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007) ("We . . . hold that the burden of proof for the exhaustion of administrative remedies in a suit governed by the [Prison Litigation Reform Act] lies with the defendant."); *Moneypenney v. Dawson*, 141 P.3d 549, 551 (Okla. 2006) ("The burden is on a defendant to prove that a plaintiff's action is barred by the applicable statute of limitations." (citation omitted)).

- issued a misconduct charge and imposed a related disciplinary conviction in July 2004; and

- double-celled him with another inmate and incited violence in September 2005.

*Id.*; *see* Plaintiff's TRO Brief at pp. 5-6 & Exh. 14; Plaintiff's Response at pp. 2, 5-6 & Exhs. 17, 19-20, 22-24.   The Defendants correctly argue that these claims are time-barred as a matter of law.   *See* Defendants' Dispositive Motion at pp. 18-19.

### A.   Computation of the Limitations Period

In Oklahoma, the limitations period for Section 1983 claims is two years.   *See Meade v. Grubbs*, 841 F.2d 1512, 1522 (10th Cir. 1988).   Thus, the limitations period would have expired on these claims between June 2006 and September 2007.   Mr. Breedlove did not initiate the suit until October 2, 2008.[20]

### B.   Claims Arising in June and July 2004

In part, Mr. Breedlove asserts claims involving acts taking place in June 2004 and July 2004.   *See supra* pp. 14-15.   With two years, Mr. Breedlove would have had to sue on these claims by July 2006.   But, Mr. Breedlove did not initiate the present suit until October 2, 2008.   *See supra* p. 15 & note 20.   By then, the two-year limitations period had expired on the claims involving:

---

[20]     The complaint is deemed "filed" when the Plaintiff had given it to prison authorities for mailing.   *See Price v. Philpot*, 420 F.3d 1158, 1164 (10th Cir. 2005) (holding "that the prison mailbox rule articulated in [*Houston v. Lack*, 487 U.S. 266 (1988)] applies equally to an inmate's filing of a civil rights complaint" (footnote omitted)).   Mr. Breedlove states that he had given the document to authorities for mailing on October 2, 2008.   *See* Complaint at p. 6.

- transfers to segregation in June and July 2004 and

- issuance of a misconduct charge and imposition of a disciplinary conviction in July 2004.

<u>The Savings Statute and the Plaintiff's Burden</u>

In response to the dispositive motion, Mr. Breedlove argues that a limitations defense is "without merit" because "[he] has had pending cases in other courts dating back to the time of the iniation [sic] of the incident[s]." Plaintiff's Response at p. 20. The Plaintiff elsewhere refers to the filing and dismissal of three cases. *See id.* at pp. 3-4.

Presumably, Mr. Breedlove is relying on Oklahoma's savings statute, which provides:

> If any action is commenced within due time, and a judgment thereon for the plaintiff is reversed, or if the plaintiff fail in such action otherwise than upon the merits, the plaintiff . . . may commence a new action within one (1) year after the reversal or failure although the time limit for commencing the action shall have expired before the new action is filed.

Okla. Stat. tit. 12 § 100. "[T]he burden rests upon [the] plaintiff to bring himself within the ambit of the statute." *Allen v. Garnett*, 100 F.2d 555, 557 (10th Cir. 1938) (citation omitted).

<u>The Plaintiff's Other Suits</u>

Mr. Breedlove identifies three lawsuits filed between June 2005 and July 2007, and all of them ended in dismissals for reasons unrelated to the merits. Plaintiff's Response at p. 3; *see supra* p. 16.[21] These proceedings would not have extended the limitations period enough to salvage the claims arising in 2004.

---

[21]     Because Mr. Breedlove executed his response under penalty of perjury, the Court should treat the document as an affidavit. Plaintiff's Response at p. 20; *see supra* note 15.

<u>Suits Begun in the Washington Federal Courts</u>

In 2005 and 2006, the Plaintiff filed two lawsuits in Washington federal courts.[22] These suits would not affect the limitations period because: (1) complaints filed in other states do not trigger the Oklahoma savings statute, and (2) the two proceedings terminated more than a year before the filing of the present action.

First, the Oklahoma savings statute applies only to actions filed in Oklahoma.[23] Mr. Breedlove acknowledges that the 2005 and 2006 suits began in the State of Washington,[24] which forecloses application of Okla. Stat. tit. 12 § 100.

Second, even if the statute applied, it would not have extended the limitations period enough to salvage the present action. The prior suits were dismissed in October 2005[25] and

---

[22]    Mr. Breedlove said that he had filed the first suit in 2005 in the Eastern District of Washington. Plaintiff's Response at p. 3. He added that the second one was filed in the Western District of Washington, but he did not specify the year. *Id.* The Court has taken judicial notice of the second complaint, which was filed on January 23, 2006. Civil Rights Complaint Under 42 U.S.C. § 1983, *Breedlove v. Johnston*, Case No. 07-CV-5044-CMP (W.D. Wash. Jan. 23, 2006); *see* Order (Dec. 7, 2009) (taking judicial notice of the cited complaint).

[23]    *See Morris v. Wise*, 293 P.2d 547, 550 (Okla. 1955) ("We adhere to the rule that the provisions of [Okla. Stat. tit. 12 § 100] accrue only to actions filed within the State of Oklahoma."); *see also Herron v. Miller*, 220 P. 36, 38 (Okla. 1923) (holding that a predecessor to Okla. Stat. tit. 12 § 100 "has no application to actions which may have been commenced within other states and have failed otherwise than upon the merits").

[24]    *See supra* note 22.

[25]    Prior to the briefing on the Defendants' dispositive motion, the Plaintiff had filed the minute entry reflecting the dismissal on October 13, 2005. *Breed'Love v. Johnston*, Case No. 05-CV-314, Docket Sheet (No. 8) (E.D. Okla. Oct. 13, 2005), *attached to* Response to Defendants with Renewed Motion for Appointment of Counsel, Exh. 4 (Mar. 4, 2009). Mr. Breedlove relied in part on this document in his response brief. Plaintiff's Response at p. 3.

May 2006.[26]  Even with the extra year, Mr. Breedlove would have had to initiate the present

action between October 2006 and September 2007.  *See supra* pp. 16-18.  But, as noted

above, Mr. Breedlove did not initiate the present action until October 2, 2008.  *See supra*

p. 15 & note 20.  Thus, even with an extra year, the present action would have begun after

expiration of the limitations period.

<u>Oklahoma County Suit</u>

Mr. Breedlove also states that in 2005, he had begun a suit in Oklahoma County.

Plaintiff's Response at p. 3; *see supra* p. 16.  Indeed, in 2005, Mr. Breedlove did tender a

petition for filing in Oklahoma County District Court.  *See* Response to Defendants with

Renewed Motion for Appointment of Counsel, Exh. 7 (Mar. 4, 2009).  However, the court

declined to file the document without the filing fee,[27] and Mr. Breedlove did not file the

petition until July 11, 2007.  Petition, *Breed'Love (Lee) v. Rayborn*, Case No. CJ-2007-5953

(Okla. Co. Dist. Ct. July 11, 2007); *see also* Plaintiff's Response at p. 4 (Mr. Breedlove's

statement that he had "suceeded [sic] in filing the case in July 11, 2007" (citations

omitted));[28] Order (Dec. 7, 2009) (taking judicial notice of the petition filed in Oklahoma

---

[26]     *See* Minute Entry, *Breed'Love v. Johnston*, Case No. 06-CV-95-RAW-SPS (E.D. Okla. May 9, 2006); *see also* Order (Dec. 7, 2009) (taking judicial notice of the minute entry).

[27]     *See* Response to Defendants with Renewed Motion for Appointment of Counsel, Exh. 7 (Mar. 4, 2009); *see also* Order (Dec. 7, 2009) (taking judicial notice of the order referenced in the text).

[28]     In Oklahoma, the Court Clerk is under a duty to file a petition only when it is accompanied by the filing fee or an affidavit for pauper status.  *See* Okla. Stat. tit. 28 § 152(A)(9)-(10) (requiring the court clerk to collect specified fees in civil actions filed in state district court); *see also Foust v. Pearman*, 850 P.2d 1047, 1048 (Okla. 1992) ("A Court Clerk must file a petition when

County District Court on July 11, 2007). By then, the two-year limitations period would already have elapsed on the claims involving the transfers to segregation in 2004 and the disciplinary proceedings in 2004.

C.    Claims Arising on September 23, 2005

The Plaintiff has also alleged double-celling and incitement of violence in September 2005. *See supra* pp. 14-15. With two years,[29] Mr. Breedlove would have had to initiate the suit by September 2007. Because Mr. Breedlove waited until October 2, 2008, to sue, the 2005 claims would be time-barred unless he can take advantage of the Oklahoma savings clause. He cannot.

As noted above, Mr. Breedlove identified two suits brought in Washington federal courts. *See supra* p. 17 & note 22. These actions would not have triggered the savings statute because they had been filed outside of Oklahoma. *See supra* p. 17. And, even if they had triggered the savings statute, the Plaintiff would still have failed to bring the present action within the extra period of time. The two Washington suits were dismissed by May 2006, which would have required Mr. Breedlove to refile the suit by September 2007 even

---

accompanied by the appropriate filing fee or pauper's affidavit." (citations omitted)). The action is not considered "commenced" under Oklahoma law until the petition is filed by the Clerk. *See* Okla. Stat. tit. 12 § 2003 ("A civil action is commenced by filing a petition with the court."). Thus, the filing of the petition in the earlier action is necessary to trigger the savings clause. *See Wiley Electric, Inc. v. Brantley*, 760 P.2d 182, 187 (Okla. 1988) ("12 O.S. 1981 § 100 requires that a new action be filed in order to avail a party of its savings provisions").

[29]    *See supra* p. 15.

with the benefit of the savings clause. *See supra* pp. 17-18. But he waited until October 2, 2008, to initiate the present action. *See supra* p. 15 & note 20.

Mr. Breedlove also sued in Oklahoma County on July 11, 2007. *See supra* p. 18.[30] But the savings clause applies only when the claims bear a substantial similarity to those that had been raised in the prior suit.[31] In the Oklahoma County suit, Mr. Breedlove had sued five of the individuals named in the current action: Debbie Morton, Jim Rabon, Marty Sirmons, Karmeon Harvonek, and Chester Mason. *See* Petition at pp. 1, 2(a), *Breed'Love (Lee) v. Rayborn*, Case No. CJ-2007-5953 (Okla. Co. Dist. Ct. July 11, 2007); *see also* Order (Dec. 7, 2009) (taking judicial notice of the petition filed in Oklahoma County District Court). The claims in the Oklahoma County action involved erroneous administration of his sentences, irregularities in his reclassification, retaliation through a false allegation of a rule infraction, denial of adequate medical care, and confiscation of property. Petition at pp. 2, 2(b),

---

[30]     As discussed above, the Washington suits did not trigger the savings statute because they had been initiated outside of Oklahoma. *See supra* p. 17. If the two Washington suits had triggered the savings statute, however, the Oklahoma County action would not have. *See Willis v. Sequoyah House, Inc.*, 194 P.3d 1285, 1287 n.6 (Okla. 2008) ("The terms of 12 O.S.2001 § 100 afford only one refiling opportunity after the statute of limitations has run." (citations omitted)); *see also Ashby v. Harris*, 918 P.2d 744, 747 (Okla. 1996) (stating that Okla. Stat. tit. 12 § 100 provided only one opportunity to refile after dismissal, and "[t]he second refiling could not be saved by § 100 and was therefore time barred").

[31]     *See Clark v. Phillips Petroleum Co.*, 677 P.2d 1092, 1095 (Okla. 1984) ("The general rule concerning [Okla. Stat. tit. 12 § 100] is that the second suit must allege substantially the same cause of action and feature substantially the same parties as the first one." (citation omitted)); *Nusbaum v. Knobbe*, 23 P.3d 302, 304 (Okla. Civ. App. 2001) ("In order for [Okla. Stat. tit. 12] § 100 to apply, the refiled action must be based on the same cause of action as the originally filed action and must be against substantially the same parties." (citation omitted)); *see also Chandler v. Denton*, 741 P.2d 855, 862-63 (Okla. 1987) (adopting "a transactional approach in defining 'causes of action'" for purposes of Okla. Stat. tit. 12 § 100).

*Breed'Love (Lee) v. Rayborn*, Case No. CJ-2007-5953 (Okla. Co. Dist. Ct. July 11, 2007);

*see also* Order (Dec. 7, 2009) (taking judicial notice of the cited petition).  In contrast, the

current issues subject to a timeliness objection involve claims of double-celling and

incitement of violence in September 2005.  *See supra* pp. 14-15, 19.  The difference in claims

prevents reliance on the savings clause.

III.   Summary Judgment on the Defense Involving Nonexhaustion of Available
       Administrative Remedies

The Defendants also seek summary judgment based on a failure to exhaust available

administrative remedies.  Defendants' Dispositive Motion at pp. 7-9.  The argument is valid

on the Section 1983 claims involving:

- retaliation;

- deprivation of due process through confiscation and destruction of property in
  February 2007 and April 2008; and

- deliberate indifference to the Plaintiff's hypertension, Hepatitis C, and need for
  "healthy foods."

The Defendants' argument for summary judgment is invalid on the claims involving:

- confiscation and destruction of property in July 2007 and

- deprivation of due process in connection with disciplinary proceedings in
  January 2007.

A.   The Exhaustion Requirement

Federal law provides: "No action shall be brought with respect to prison conditions

under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available are exhausted." Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). This law "requires proper exhaustion" of the prison's administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 92 (2006).

B.     The Claims Involving Retaliation, Property, and Medical Care

The Plaintiff's claims include retaliation, confiscation and destruction of property, and inadequate medical attention. *See infra* pp. 23-34, 39-42. Some of these claims were exhausted and some were not.

The Governing Administrative Process

Pursuant to the administrative process of the Oklahoma Department of Corrections ("DOC"), an inmate should initially attempt to informally resolve the matter with a staff member. *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exhibit 17 at p. 5 (Jan. 21, 2009) ("Special Report"). If that attempt is unsuccessful, an inmate may file an informal request to staff. *See id.* The prisoner can file a grievance if he is dissatisfied with the result or if authorities fail to respond within 30 days. *See id.* at p. 6. If the inmate remains dissatisfied, he can appeal to the administrative review authority or the chief medical officer. *See id.* at pp. 9-10. At that point, however, the administrative process is complete. *See id.* at p. 11.

<u>Retaliation Claim</u>

Mr. Breedlove alleges that all of the Defendants' misdeeds had involved retaliation for his exercise of first amendment rights. Complaint at pp. 2-4. Ms. Debbie Morton states under oath that Mr. Breedlove has failed to exhaust administrative remedies on the retaliation claims,[32] and the Plaintiff provides no contrary argument or evidence. Thus, the Defendants are entitled to summary judgment for nonexhaustion of the retaliation claims. *See supra* pp. 12-14.

<u>Claims Involving Confiscation and Destruction of Property on February 14, 2007</u>

Mr. Breedlove alleges deprivation of due process when his property was confiscated and destroyed on February 14, 2007.[33] This claim was not exhausted.

Ms. Morton states under oath that Mr. Breedlove has not exhausted this claim. Special Report, Exh. 18 (affidavit of Debbie Morton); *see also supra* note 32. Mr. Breedlove did file a request to staff, a grievance, and an appeal. *See* Plaintiff's TRO Brief, Exh. 11-B at pp. 1-3. However, authorities rejected Mr. Breedlove's appeal because he had written on

---

[32] *See* Special Report, Exh. 18 (affidavit of Debbie Morton) (stating under oath that none of the non-medical issues have been exhausted).

[33] In the complaint, Mr. Breedlove generally alleged that four defendants had "continuously allowed subordinates to take and destroy property . . . without due process, inter alia, at OSP." Complaint at p. 3; *see supra* pp. 7, 9 & note 13. In a brief filed on the same day, Mr. Breedlove alleged that his property had been taken and destroyed since February 15, 2007. Plaintiff's TRO Brief at p. 6. The administrative documents indicate that the alleged incident had actually taken place on February 14, 2007. *See* Plaintiff's TRO Brief, Exh. 11-B at pp. 1-2; Special Report, Exh. 18(a) at pp. 1, 3.

the front of the grievance response form.  *See* Plaintiff's TRO Brief, Exh. 11-B at p. 4.[34]

Informed that he could resubmit the appeal,[35] the Plaintiff provides no evidence that he did.

Exhaustion is complete only when the grievance procedures are properly utilized.[36]

Because Mr. Breedlove did not properly utilize the DOC's grievance procedure, his claim

was unexhausted.[37]

---

[34]    The administrative procedure for grievance appeals states:  "The inmate may write additional comments only on the back of the 'Grievance Response from Reviewing Authority' form. Comments may not be written on the front of the form or on the grievance or request to staff." Special Report, Exh. 17 at p. 9.

[35]    *See* Plaintiff's TRO Brief, Exh. 11-B at p. 4 ("You may resubmit your corrected grievance within ten calendar days of receipt of this notice.").

[36]    *See supra* p. 22 (discussing the requirement of "proper exhaustion"); *see also Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (stating that the doctrine of substantial compliance does not apply to exhaustion under 42 U.S.C. § 1997e).

[37]    *See Kikumura v. Osagie*, 461 F.3d 1269, 1290 (10th Cir. 2006) ("[C]laims rejected by the prison grievance system on procedural grounds are still considered unexhausted."), *overruled on other grounds*, *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008).

## Claims Involving Confiscation and Destruction of Property on July 6, 2007

Mr. Breedlove alleges that on July 6, 2007, authorities had confiscated and destroyed his property.[38] For purposes of summary judgment, the Court should reject the Defendants' exhaustion argument on this claim.[39]

The Plaintiff filed a request to staff and grievance and appealed the denial of his grievance. *See* Special Report, Exh. 18(d) at pp. 2-5. But the administrative review authority returned the appeal, unanswered, on grounds that the Plaintiff had waited too long to file the grievance. Special Report, Exh. 18(d) at p. 1.

Under the policy, Mr. Breedlove had to submit the grievance within fifteen days of the incident or the response to the request to staff, whichever was later. Special Report, Exh. 17 at p. 5. The alleged incident took place on July 6, 2007. *See supra* p. 25. The Plaintiff believes that he had filed the grievance within fifteen days. On this issue, the evidence could support a finding either way. Mr. Breedlove dated the grievance July 17, 2007, which would

---

[38]     As noted above, Mr. Breedlove had referred in the complaint to a continuous taking and destruction of his property. *See supra* note 33; *see also* Complaint at p. 3. But he expressly incorporated the exhibits to a contemporaneous brief. Complaint at p. 3 ("See: Exhibits to Injunction/TRO - Attached"). In these exhibits, Mr. Breedlove complained about the taking and destruction of his property on July 6, 2007. Plaintiff's TRO Brief, Exh. 11-C at pp. 1, 3; *see supra* note 14.

[39]     As noted above, however, Defendants Harvoneck, Morton, Sirmons, and Jones are entitled to dismissal of this part of Count I based on failure to state a valid claim. *See supra* pp. 7-11.

have been within fifteen days of the incident. Special Report, Exh. 18(d) at p. 2. But the grievance was stamped August 9, 2007, which could have been regarded as late. *Id.*[40]

If Mr. Breedlove had submitted the grievance on July 17, 2007, he would have satisfied the fifteen-day deadline and the administrative review authority would have been wrong to reject the appeal on grounds of timeliness. Because these conclusions would involve reasonable interpretations of the documentary evidence, the Court should deny the Defendants' summary judgment argument on the claim involving confiscation and destruction of property on July 6, 2007.[41]

### Claims Involving Destruction of Property on April 9, 2008

On April 9, 2008, prison officials allegedly destroyed the Plaintiff's radio.[42] Mr. Breedlove argues that he had "grieved" the taking of his radio on April 9, 2008, and May 22, 2008, and received "no response." Plaintiff's Response at pp. 9-10, 17-18. This argument does not suffice to prevent summary judgment on the claim.

---

[40] As noted above, the fifteen-day period could run from the answer to the request to staff; but that date is illegible. *See supra* p. 25; Special Report, Exh. 18(d) at p. 5.

[41] *See Williams v. Franklin*, 302 Fed. Appx. 830, 832 (10th Cir. Dec. 12, 2008) (unpublished op.) (stating that the district court's dismissal on exhaustion grounds constituted error because the administrative review authority had been mistaken when he told the inmate plaintiff that his grievance was out-of-time).

[42] As noted above, in the complaint Mr. Breedlove alleged the continuous taking and destruction of his property and incorporated the exhibits from a contemporaneous brief. *See supra* notes 33, 38. In these exhibits, Mr. Breedlove had alleged confiscation and destruction of his radio on April 9, 2008. Plaintiff's TRO Brief, Exh. 11 at pp. 1, 3.

Mr. Breedlove filed two similar requests to staff to the same prison official on April 9, 2008. *See* Plaintiff's TRO Brief, Exh. 11 at p. 1; Special Report, Exh. 19(d) at p. 3. One of the requests was apparently unanswered. *See* Plaintiff's TRO Brief, Exh. 11 at p. 1. Nevertheless, the prison official responded to the other request on April 10, 2008. *See* Special Report, Exh. 19(d) at p. 3. Mr. Breedlove challenged that response in a grievance filed May 22, 2008. Special Report, Exh. 19(d) at p. 2. The Special Report contains a document purporting to reflect a response to the grievance on May 29, 2008. Special Report, Exh. 19(d) at p. 5. However, the Plaintiff claims that he never received that response[43] and that his signature on the document is a forgery. Plaintiff's Response at pp. 10, 18. Due to the lack of a response, Mr. Breedlove claims that he could not continue the grievance process and lacked an available remedy. *Id.* at p. 18.

This theory is unavailing. Even if Mr. Breedlove never received a response to his grievance, he still had an available remedy through a grievance complaining about the lack of a response. *See supra* p. 22.[44] The failure to take advantage of this course of action requires entry of summary judgment for the Defendants based on nonexhaustion.[45]

---

[43]     The Plaintiff submitted the same document as "Exhibit B," page 4, attached to his response brief.

[44]     The decision in *Whitington v. Ortiz*, 472 F.3d 804 (10th Cir. 2007), is not to the contrary. There the court held that a failure to timely respond to a "Step 3 grievance" by Colorado officials had left the inmate without an available administrative remedy. *Whitington v. Ortiz*, 472 F.3d at 808. But the decision was silent about the availability of a procedure to proceed when officials had failed to timely respond to a "Step 3 grievance." *See id.* at 806.

[45]     *See Holden v. Dinwiddie*, 2009 WL 2475183, Westlaw op. at 1 (10th Cir. Aug. 13, 2009) (unpublished op.) (holding that an Oklahoma prisoner had failed to exhaust a Section 1983 claim

<u>Claims Involving Treatment for Hepatitis C</u>

According to Mr. Breedlove, he has been denied adequate care for Hepatitis C. Complaint at p. 3. The Defendants present a sworn affidavit that Mr. Breedlove has not properly grieved these claims,[46] and the Plaintiff has not presented any contrary evidence.[47] Thus, Mr. Breedlove has failed to create a genuine issue of material fact regarding exhaustion of his Eighth Amendment claims involving a failure to treat his hepatitis.

The Plaintiff seems to argue futility of exhaustion, citing two examples of an alleged failure to respond to his medical grievances. Plaintiff's Response at pp. 6-7. Mr. Breedlove believes that these two examples "outweight [sic] defenses [sic] assertion that plaintiff failed to exhaust admin-remedies on any medical grievance, other [than] the glucometer issue." *Id.*

---

involving medical care because he had remaining remedies available under the DOC policy even if authorities had failed to respond to his request to staff); *Smith v. Beck*, 165 Fed. Appx. 681, 684-85 (10th Cir. Feb. 8, 2006) (unpublished op.) (holding that the lack of a response does not excuse a failure to exhaust administrative remedies because Oklahoma prisoners can "continue to appeal within the prison system even if they do not receive responses to their Requests to Staff or their grievances").

[46]     Special Report, Exh. 15 at p. 1 (affidavit of Mike Murray).

[47]     Mr. Breedlove has submitted six requests for medical services with respect to the hepatitis. These requests involve: (1) a question about how the Department of Corrections planned to treat the hepatitis, (2) a statement of need for medical care, (3) a request for access to the nearest Veterans Administration Hospital, (4) a request for someone to explain to Dr. Marler that there was no history of mental health that would prevent treatment for Hepatitis C, (5) a request for outside medical care, and (6) a complaint regarding symptoms. Plaintiff's TRO Brief, Exh. 2; Objection to Motion for Time and Renewed Objection for Martinez Report, Exhs. A, D, F (Dec. 29, 2008); Motion to Strike Defenses [sic] Reply Brief, Exhs. 5-6 (Apr. 15, 2009). Notwithstanding the multiple requests for medical services, Mr. Breedlove has not presented any evidence of a grievance on the subject of his care for hepatitis.

at p. 7. This argument is invalid because: (1) exhaustion is necessary even when it would be futile, and (2) the Plaintiff's examples do not show futility of administrative exhaustion.

First, even if Mr. Breedlove had experienced difficulty in the administrative process, the Court cannot excuse exhaustion on grounds of futility. *See Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).

Second, Mr. Breedlove's two examples would not show futility.

The Plaintiff's examples involve: (1) a request for treatment for an allergy, and (2) the lack of a sterile alcohol swab for an insulin injection. Plaintiff's Response at pp. 6-7 (citing Exhs. 25 & 30). Both examples are inapposite because Mr. Breedlove had not exhausted either the request for treatment of the allergy or the complaint about the sterility of the alcohol swab.

The allergy example is misguided because Mr. Breedlove did not complete the administrative process on the issue. As Mr. Breedlove states, he did submit a request for medical services, stating that a physician had ordered Benadryl and that it had not been received. Plaintiff's Response, Exh. 25; *see* Plaintiff's Response at p. 6. Two days later, the Plaintiff filed a grievance, requesting a refund for the money spent on the medicine. Plaintiff's Response, Exh. 26. The officer returned the grievance, unanswered, because the request to staff had not been attached. Plaintiff's Response, Exh. 27. Mr. Breedlove resubmitted the grievance and it was again returned, unanswered, because of procedural defects. Plaintiff's Response, Exh. 28. Mr. Breedlove resubmitted the grievance and the

official again returned the document, unanswered, based on the same procedural deficiencies he had previously noted. Plaintiff's Response, Exh. 29. According to Mr. Breedlove, the official should not have returned the grievance. Plaintiff's Response at p. 6. But, regardless of the correctness or incorrectness of the officer's action, Mr. Breedlove had failed to complete the administrative process in light of his opportunity to resubmit the grievance without the deficiencies after it had been returned the second time. *See supra* p. 24.

In his response brief, the Plaintiff indicates that he had filed grievances regarding the alcohol swab on March 13 and 15, 2007. Plaintiff's Response at pp. 6-7; Plaintiff's Response, Exh. 30 at p. 1. According to the Plaintiff, Mr. Mason failed to respond to the grievances. Plaintiff's Response at p. 7; Plaintiff's Response, Exh. 30 at p. 1. The Plaintiff then filed two requests to staff complaining about the lack of a response. *See* Plaintiff's Response, Exh. 30 at pp. 2, 5. Mr. Breedlove explains that despite his complaints, he never received a response. Plaintiff's Response at p. 7.

Even if the Plaintiff had included this claim in the complaint, he would have failed to properly complete the administrative process. Mr. Breedlove addressed his initial grievance to the medical supervisor. Plaintiff's Response, Exh. 30 at p. 1. If the medical supervisor had failed to respond, as Mr. Breedlove suggests, the administrative process would have called for a "grievance to the administrative review authority or chief medical officer with evidence of submitting the grievance to the proper reviewing authority." Special Report, Exh. 17 at p. 7. Under this procedure, the "Administrative Review Authority" is considered

"[t]he director, chief medical officer, or their designee to whom the formal grievance is submitted for final appeal." *Id*. at p.1. But Mr. Breedlove did not submit a grievance, complaining about the lack of a response, to the director, chief medical officer, or a designee of the director or chief medical officer. Instead, Mr. Breedlove filed requests to staff with his unit manager and warden. Plaintiff's Response, Exh. 30 at pp. 2, 5. These submissions deviated from the required procedure if the medical supervisor had failed to respond to a grievance. As a result, Mr. Breedlove's filings show that he had failed to properly exhaust his complaint about the sterility of the alcohol swab.

The Plaintiff's argument assumes that exhaustion can be excused when it would be futile. That assumption is incorrect. Indeed, even if the law were otherwise, Mr. Breedlove's submissions would not have shown futility. Instead, his submissions would simply have reflected a failure to properly exhaust a potential claim involving treatment for allergies or sterility of the alcohol swab.

### Claims Involving Treatment for Hypertension

The Plaintiff further alleges disregard for the need to treat his hypertension. Complaint at p. 3. The Defendants present a statement under oath that Mr. Breedlove had failed to properly submit a grievance on this allegation. Special Report, Exh. 15 (affidavit of Mike Murray). Again, the Plaintiff has failed to present any contrary evidence.

The Plaintiff did submit grievances on the claim on September 19, 2006, and August 10, 2008. Special Report, Exh. 15(a) at p. 3, Exh. 15(c) at p. 2. But officials returned both

grievances, unanswered, because of procedural defects.  Special Report, Exh. 15(a) at p. 2, Exh. 15(c) at p. 1.

The first grievance was addressed to the warden, rather than the health administrator, and failed to include a request to staff.  Special Report, Exh. 15(a) at p. 2.  The Plaintiff criticized the response in handwritten notes and submitted them to the medical services administrator.  *Id*.  The medical services administrator returned the complaint to Mr. Breedlove, unanswered, because:  (1) he had failed to attach a staff response to his request to staff, (2) the grievance had been sent more than fifteen days after the incident or the response to the request to staff, (3) there was no "Grievance Response from Reviewing Authority," and (4) an extra page had been included with the grievance.  Special Report, Exh. 15(a) at p. 1.

Under the procedure, Mr. Breedlove had an opportunity to "re-submit the grievance within ten calendar days of receipt."  Special Report, Exh. 17 at p. 6.  But the Plaintiff did not present any evidence of resubmission to cure the procedural defects.  The omission is fatal and requires an award of summary judgment to the moving defendants on the Section 1983 claim involving treatment for hypertension.  *See supra* pp. 24, 30.

<u>Claims Involving Management of Diabetes:  Lack of Healthy Foods</u>

Mr. Breedlove also complains of his treatment for diabetes.  Complaint at p. 3.  The Court should sustain the summary judgment motion, on grounds of nonexhaustion, with respect to the Defendants' alleged failure to supply healthy foods.

To assess the Defendants' exhaustion argument, the Court must initially determine the scope of the Plaintiff's claim with respect to his diabetic treatment. In the complaint, the Plaintiff generally asserts that "since February 2006, [he] has been suffering from type-II diabetes[48] and defendants have failed to provide him with access to the tools needed to monitor and treat daily Hyper and Hypo-glycemic episodes of this disorder." *Id.* In seeking a temporary restraining order on the same day that he sued, Mr. Breedlove alleges in part that the Defendants have failed to provide "access to an environment for healthy foods and a diabetic meter to monitor sugar levels daily in his blood." Plaintiff's TRO Brief at p. 4. In light of the contemporaneous nature of the filings, the Court should broadly construe the complaint to include a claim involving failure to supply healthy foods for Mr. Breedlove's diabetic condition. *See Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002).

The resulting issue is how to interpret the Defendants' motion. Read fairly, the motion appears to encompass the claim involving a failure to supply healthy foods. In the dispositive motion, the Defendants apparently acknowledge that the Plaintiff has completed the administrative process on his claim involving a refusal to allow possession of a glucose monitor.[49] However, the Defendants have contested exhaustion on all other medical

---

[48] Elsewhere the Plaintiff states that his diabetes is "Type-I." Plaintiff's Response at pp. 2, 8.

[49] In their statement of facts, the Defendants remark: "Plaintiff failed to exhaust his administrative remedies with regard to any medical grievance, except for his grievance requesting to either keep a glucose monitor on [his] person or in the alternative, for a transfer to another facility." Defendants' Dispositive Motion at p. 2 (citation omitted). And in the body of their argument, the Defendants state that "the only grievance exhausted by the Plaintiff was his grievance requesting a glucose meter for use in his cell, or in the alternative a transfer to another facility." *Id.* at p. 8.

claims,[50] which would encompass the Plaintiff's complaint regarding the foods being served in light of his diabetic condition.

The Defendants rely on an affidavit, attesting to the absence of a properly submitted grievance on all medical issues other than the inability to possess a glucose meter or obtain a medical transfer. Special Report, Exh. 15 (affidavit of Mike Murray). In response, the Plaintiff has not submitted any evidence of a grievance on the inability to obtain healthy foods. As a result, the Defendants are entitled to summary judgment on this claim. *See supra* pp. 12-14, 23.

C.      Claims Involving a 2007 Disciplinary Conviction

Mr. Breedlove also challenges a 2007 disciplinary conviction.[51] In response, the Defendants argue that the Plaintiff "failed to properly exhaust his administrative remedies on the 2007 misconduct." Defendants' Dispositive Motion at pp. 8-9. The Court should reject this argument for purposes of summary judgment.[52]

---

[50]     Defendants' Dispositive Motion at p. 2; *see supra* note 49.

[51]     In the complaint, Mr. Breedlove broadly alleged issuance of "rule violations . . . without due process." Complaint at p. 3. In doing so, Mr. Breedlove incorporated the exhibits from a contemporaneous brief. *Id.* ("See: Exhibits to Injunction/TRO - Attached"); *see supra* notes 14, 38. In these exhibits, the Plaintiff submitted documentation of a disciplinary conviction on January 30, 2007. Plaintiff's TRO Brief, Exh. 12 at pp. 2-3.

[52]     As noted above, however, Defendants Harvoneck, Sirmons, Morton, and Jones are entitled to dismissal of this part of Count I based on failure to state a valid claim. *See supra* pp. 7-11.

As exhaustion is an affirmative defense,[53] the Defendants bear the burden to demonstrate the availability of an administrative remedy for Mr. Breedlove to challenge the disciplinary conviction.[54]

In their motion and brief, the Defendants failed to: (1) identify an administrative remedy available to challenge the 2007 disciplinary conviction,[55] or (2) cite any evidence of a failure to pursue this remedy. As a result, the Defendants have not articulated or presented

---

[53]    *See supra* p. 14.

[54]    *See Kaemmerling v. Lappin*, 553 F.3d 669, 675 (D.C. Cir. 2008) ("The BOP has failed to carry its burden [under 28 U.S.C. § 1997e(a)] of showing an administrative remedy available for [the plaintiff] to exhaust." (citation omitted)); *Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005) (holding that the defendants had failed to satisfy their burden to prove the existence of an available administrative remedy); *Brown v. Valoff*, 422 F.3d 926, 936-37 (9th Cir. 2005) (stating that under 28 U.S.C. § 1997e(a), "a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process" (citation omitted)).

[55]    The DOC submitted a grievance policy and an affidavit regarding the availability of a disciplinary appeal. Special Report, Exhs. 17-18.

The grievance policy states that it cannot be used to challenge a misconduct conviction. Special Report, Exh. 17 at p. 2. As a result, Mr. Breedlove could not challenge the 2007 misconduct conviction through the grievance process. *See Owens v. Keeling*, 461 F.3d 763, 769 (6th Cir. 2006) ("The non-grievability of [the plaintiff's] classification-related complaint through the grievance process makes that remedy unavailable under the [Prison Litigation Reform Act], and thus he does not have to pursue that remedy to exhaust his claim." (citation omitted)); *see also Valdez v. Corrections Corporation of America*, 2009 WL 3245422, Westlaw op. at 6 (W.D. Okla. Sept. 30, 2009) (unpublished report by magistrate judge) (concluding that "nonexhaustion of the inmate grievance process" was not a defense because the plaintiff could not challenge the disciplinary action through the grievance procedure), *adopted*, 2009 WL 3245422, Westlaw op. at 1 (W.D. Okla. Sept. 30, 2009) (unpublished order by district judge).

The DOC also submitted an affidavit, stating that as of January 9, 2009, a process was available to appeal a disciplinary conviction. Special Report, Exh. 18. However, in the dispositive motion and supporting brief, the Defendants never referred to the affidavit or its contents.

evidence of a failure to pursue any identifiable administrative remedies for Mr. Breedlove to challenge the 2007 misconduct conviction.

The Court must confine its decision to the argument and evidence presented by the Defendants in support of summary judgment on their affirmative defense.[56] Without any argument or evidence regarding the existence of an available administrative remedy on the claims involving the 2007 misconduct conviction, the Court is compelled to overrule this part of the Defendants' argument for summary judgment.

D.    Summary

The Defendants seek summary judgment, arguing that Mr. Breedlove failed to properly exhaust his administrative remedies.  The Court should grant the Defendants' motion on the claims involving:

- retaliation;

- deprivation of due process through confiscation and destruction of property in February 2007 and April 2008; and

- deliberate indifference to the Plaintiff's hypertension, Hepatitis C, and need for "healthy foods."

For purposes of summary judgment, the Court should reject the Defendants' exhaustion argument on the claims involving property loss in July 2007 and deprivation of due process in the 2007 disciplinary conviction.

---

[56]    The Tenth Circuit Court of Appeals has stated:  "[Prison Litigation Reform Act] exhaustion is an affirmative defense.  We follow our usual practice with respect to affirmative defenses, and address only those arguments related to exhaustion that have been raised by defendants."  *Howard v. Waide*, 534 F.3d 1227, 1244 (10th Cir. 2008) (citations omitted).

IV.    Summary Judgment on the Defense of Qualified Immunity

The Defendants have broadly urged qualified immunity.  *Id.* at pp. 13-14.  For purposes of summary judgment, the Court should reject this defense.

The scope of the issue is narrow because qualified immunity involves only personal capacity claims for damages[57] and the only monetary claim to survive the summary judgment motion would be the one involving reimbursement for the loss of property in July 2007.[58]

The Defendants' argument on qualified immunity consists of three sentences.[59]  *Id.* at p. 14.  None would justify summary judgment on the damage claim for confiscation and destruction of property in July 2007.  *See supra* pp. 25-26.

The first sentence is:  "Plaintiff has not shown that Defendants violated any of his clearly established federal rights."  Defendants' Dispositive Motion at p. 14.  The Defendants' assertion is not explained.  But presumably the Defendants intended to explain the argument with the next two sentences:

- "In fact, the Special Report reveals that Defendants have provided Plaintiff with medical treatment that is in accordance with DOC policy and accepted medical standards."

---

[57]    *See Meiners v. University of Kansas*, 359 F.3d 1222, 1233 n.3 (10th Cir. 2004) ("Qualified immunity applies to claims for monetary relief against officials in their individual capacities, but it is not a defense against claims for injunctive relief against officials in their official capacities." (citation omitted)).

[58]    *See supra* pp. 25-26.

[59]    Before the three sentences, the Defendants summarized the inquiry for qualified immunity.  Defendants' Dispositive Motion at p. 13.  But this section of the brief does not contain an argument.  *See id.*

- "Furthermore, his sentence calculation and misconducts were in accord with DOC policies."

*Id.* As discussed elsewhere, the Defendants are entitled to dismissal or summary judgment on other grounds with respect to the claims involving the medical treatment, the administration of Mr. Breedlove's sentence, and the conviction on a disciplinary charge in 2004. *See supra* pp. 14-19, 28-34; *infra* pp. 39-42. And on the claim involving the January 2007 misconduct conviction, Mr. Breedlove has not requested monetary relief. *See* Complaint at p. 5.

As noted above, Mr. Breedlove has sought monetary relief only on the claim involving property confiscation and destruction. *See supra* p. 37. These claims involve incidents allegedly taking place on February 14, 2007; July 6, 2007; and April 9, 2008. *See supra* pp. 23-27. As discussed above, the Defendants are entitled to summary judgment on other grounds for the claims involving the incidents on February 14, 2007, and April 9, 2008. *See supra* pp. 23-24, 26-27.

For the alleged wrongdoing on July 6, 2007, the Defendants have asserted only that the Plaintiff has "not shown" a violation of "any of his clearly established federal rights." Defendants' Dispositive Motion at p. 14; *see supra* p. 37. In the context of the claim involving property destruction in July 2007, this argument failed to provide the Plaintiff with any notice of why the Defendants felt they were entitled to summary judgment. As a result, the Court should reject this argument in connection with the personal capacity claims for

monetary relief arising out of the confiscation and destruction of property in July 2007. *See Bronson v. Swensen*, 500 F.3d 1099, 1105 (10th Cir. 2007) (concluding that a party's "cursory statements, without supporting analysis and case law, fail to constitute the kind of briefing that is necessary" to merit consideration by the court); *see also Guillemard-Ginorio v. Contreras-Gomez*, 490 F.3d 31 (1st Cir. 2007).[60]

V.    Summary Judgment on the Elements of the Plaintiff's *Prima Facie* Case:  Deliberate Indifference to the Medical Need for Daily Monitoring of a Diabetic Condition

The Defendants are entitled to summary judgment on the claim regarding the need for daily monitoring of glucose levels.[61]

---

[60]    In *Guillemard-Ginorio v. Contreras-Gomez*, the defendants presented a qualified immunity argument consisting of three sentences:

>    (1)    "[D]efendants herein did not engage in any type of conduct that was violative of *any* of plaintiffs' constitutional rights; hence it is not plausible to conclude that defendants' actions were unlawful.  Thus, this entitles defendants to qualified immunity."
>
>    (2)    "Moreover, the application as a matter of law of both the *Mt. Healthy* and privileged qualified immunity defenses warrants summary disposition of *all claims* at this stage of the proceedings."
>
>    (3)    "Defendants in their personal capacity cannot be held liable in this case because they are cloaked by qualified immunity."

*Guillemard-Ginorio v. Contreras-Gomez*, 490 F.3d at 36-37 (citations omitted; emphasis in original).  The federal appellate court concluded that the three sentences could be described as "vague" and failed to adequately present a meaningful basis for qualified immunity.  *Id*. at 37.

[61]    The Defendants also argue that the Plaintiff has failed to demonstrate a right to injunctive relief.  Defendants' Dispositive Motion at pp. 17-18.  The Court need not address this argument in light of the availability of dismissal or summary judgment on other grounds for all of the Section 1983 claims.

In part, Mr. Breedlove has alleged refusal to provide a device for daily monitoring of his blood sugar level. Complaint at p. 3; *see* Plaintiff's TRO Brief at pp. 3-4. The Defendants concede the denial of access to this device, but submit an affidavit that explains:

> In regards to plaintiff's request to have self testing supplies in his cell to check his own blood sugars, this request has been denied due to security and health issues. The equipment used with the monitor can be misused in the prison environment; the monitoring equipment contains a sharp [needle] that can be misused as a homemade tattoo needle device or for many other reasons that could be posed as a risk to other offenders and staff for blood borne illnesses. Procedures are in place to have nursing staff monitor his blood sugar levels as needed by nursing staff as required by the physician. The provider currently has written for the plaintiff's blood sugars to be checked once a week in the arm, the plaintiff has previously had orders for as many as two times a week, but has now been ordered for once a week.

Special Report, Exh. 11 at p. 2 (affidavit of Chester Mason).

The Eighth Amendment requires prison officials to "provide humane conditions of confinement" for inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). As a result, deliberate indifference to a prisoner's serious illness is actionable under Section 1983. *See Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). A prison official violates the Eighth Amendment when the deprivation was "sufficiently serious" and resulted from "deliberate indifference" to an inmate's health. *Farmer v. Brennan*, 511 U.S. at 834.

The Defendants do not question the seriousness of Mr. Breedlove's diabetes as a medical condition. However, the Defendants argue that the Plaintiff lacks evidence of deliberate indifference. Defendants' Dispositive Motion at pp. 10-11. The Defendants are correct.

Viewed in the light most favorable to the Plaintiff,[62] the summary judgment record indicates:

- Mr. Breedlove's physician had ordered blood sugar monitoring once a week.

- Nursing staff monitored the Plaintiff's blood sugars based on the physician's instructions.

- Personal possession of a blood sugar monitor would create a security and health concern.

*See supra* p. 40.

Mr. Breedlove disagrees with these medical and security decisions. Plaintiff's Response at p. 9; *see* Plaintiff's TRO Brief at p. 4. But liability under Section 1983 cannot be based solely on disagreement regarding treatment between a prisoner and the officials. *See*, *e.g.*, *Smart v. Villar*, 547 F.2d 112, 113-14 (10th Cir. 1976). As a result, the Defendants are entitled to summary judgment on this claim. *See Wilson v. Sharp*, 43 F.3d 1484, 1994 WL 699162, Westlaw op. at 1 (10th Cir. Dec. 14, 1994) (unpublished op.);[63] *see also Worthen v. Ryan*, Case No. CIV-02-872-W, slip op. at 22-29 (W.D. Okla. June 2, 2004)

---

[62]     *See supra* p. 12.

[63]     In *Wilson v. Sharp*, an Oklahoma prisoner sued under Section 1983, claiming in part that he had diabetes and that jail officials had failed to check his blood glucose level "with sufficient regularity." *Wilson v. Sharp*, 43 F.3d 1484, 1994 WL 699162, Westlaw op. at 1 (10th Cir. Dec. 14, 1994) (unpublished op.). The federal district court granted summary judgment to the defendants, and the Tenth Circuit Court of Appeals upheld the ruling. *Id*. In affirming, the federal appeals court noted that the undisputed evidence reflected multiple tests of blood pressure and blood glucose levels and stated: "While [the inmate's allegations of a failure to check his blood glucose level with sufficient regularity] may at most raise a question of negligence, they do not show the deliberate indifference to a serious medical need required to state a constitutional claim." *Id*. (citation omitted).

(unpublished report and recommendation by magistrate judge) (holding that prison officials were entitled to summary judgment, based on the absence of evidence involving deliberate indifference, when a prisoner with Type II diabetes sued under Section 1983 based in part on the failure to conduct daily glucose tests), *adopted* (W.D. Okla. Aug. 9, 2004) (unpublished order by district judge).

SUMMARY OF RECOMMENDATIONS
ON THE SECTION 1983 CLAIMS

The Court should grant the moving defendants' requests for:

- dismissal without prejudice on the official capacity claims for money damages under Section 1983;

- summary judgment on the remaining Section 1983 claims for retaliation; deprivation of due process based on the incidents in 2004 involving transfers to segregation and a conviction on disciplinary charges; deprivation of due process through confiscation and destruction of property on February 14, 2007, and April 9, 2008; cruel and unusual punishment through forced double-celling and incitement of harm from other prisoners in 2005; and deliberate indifference to serious medical needs; and

- dismissal with prejudice on the remaining Section 1983 claims involving manipulation of a prison sentence;

- dismissal without prejudice on the remaining Section 1983 claims against K. Harvoneck, M. Sirmons, D. Morton, and Justin Jones.

The Court should allow the Plaintiff to seek leave to amend if he believes that he can cure the pleading defect on his claims involving property destruction in July 2007 or conviction on misconduct charges in January 2007.

## NOTICE OF THE RIGHT TO OBJECT

The parties can object to the present report and recommendation. Any such objection must be filed with the Clerk of this Court by December 28, 2009. *See* Fed. R. Civ. P. 6(a)(3)(A), 6(a)(6)(A), 6(d), 72(b)(2); 28 U.S.C. § 636(b)(1). The failure to timely object would foreclose appellate review of the suggested rulings.[64]

## POTENTIAL EFFECT ON THE STATUS ON THE PROCEEDINGS

The referral would remain pending even if the presiding judge adopts the report. And, as discussed above, the report would not affect the status of any claims involving the Americans with Disabilities Act. *See supra* note 1. But adoption of the report would terminate the Plaintiff's existing claims under Section 1983 against K. Harvoneck, M. Sirmons, Justin Jones, Debbie Morton, Jim Rabon, J. Marlar, and Chester Mason.

Entered this 8th day of December, 2009.

Robert E. Bacharach

Robert E. Bacharach
United States Magistrate Judge

---

[64]     *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *cf. Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").